

**FILED**
CLERK, U.S. DISTRICT COURT

**9/28/2015**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____GR_____ DEPUTY

1
2
3
4
5
6
7
8

9          **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11

12   BARBARA BOLTON,                    Case No. CV 14-07288 RAO

13              Plaintiff,

14        v.                            **MEMORANDUM OPINION AND ORDER**

15   CAROLYN W. COLVIN,
     Acting Commissioner of the Social
16   Security Administration,

17              Defendant.

18

19

20   **I.    SUMMARY OF RULING**

21         Plaintiff Barbara Bolton ("Plaintiff") challenges the Appeals Council's

22   ("Council") determination that she is not eligible to receive Supplemental Security

23   Income ("SSI") disability benefits.  The Council affirmed the Administrative Law

24   Judge's ("ALJ") finding that Plaintiff possessed resources that exceeded regulatory

25   limits and that as a result, she was ineligible to receive benefits.  (Administrative

26   Record ("AR") 7-10 (Council's decision); AR 31-33 (ALJ's decision)).

27         On appeal, this Court concludes that the Council's determination that

28   Plaintiff possessed excess resources during the adjudicative period is not supported

by substantial evidence in the record.  As a result, the Court REVERSES the Council's determination that Plaintiff is ineligible to receive SSI benefits and REMANDS for further administrative proceedings consistent with this decision.

## II.   PROCEEDINGS BELOW[1]

In December 2009, Plaintiff filed for SSI disability benefits.  (See generally AR 29, 124-27).  On January 13, 2010, the Social Security Administration ("Agency") requested additional information from Plaintiff related to her contemporary living arrangement and resources.  (AR 117-18).

On February 24, 2010, the Agency denied Plaintiff's SSI application on the grounds that Plaintiff had failed to provide the information it had requested.  (AR 124-27).  On October 8, 2010, the Agency found that Plaintiff was not eligible to receive SSI from December 2009 and thereafter because her resources were worth more than $2,000.00.  (AR 131-39).  Upon reconsideration, the Agency upheld its initial decision.  (AR 145-47).

Plaintiff filed for a hearing on April 11, 2011.  (AR 148).  Prior to processing the request, the Agency asked Plaintiff to provide additional property and asset

---

[1]   On January 18, 2008, administrative proceedings led to a fully favorable decision for Plaintiff.  See Barbara A. Bolton v. Acting Comm'r of Soc. Sec. Admin., No. CV 03-00129 RZ (C.D. Cal. Mar. 21, 2012) (stipulation stating same); see also Memorandum in Support of Plaintiff's Complaint ("Pl.'s Compl.") 1-2, ECF No. 15 (stating that in January 2008, Plaintiff had been found to be disabled since March 21, 1996); (see generally AR 99 (March 2008 report noting onset date of Plaintiff's favorable hearing decision as March 21, 1996)).  This finding led to an award of benefits and back pay to Plaintiff.  Pl.'s Compl. 2, ECF No. 15; (AR 7, 99).  Thereafter, Plaintiff states that when determining Plaintiff's award amount, it was discovered that Plaintiff had moved in with her daughter and was no longer living at her address of record.  See Pl.'s Compl. 2-3, ECF No. 15.  This subsequently led to a finding that her home of record was a "countable resource" that exceeded the statutory value limit for benefit eligibility.  See id.  Consequently, it was determined that Plaintiff had been overpaid benefits from March 2006 to March 2008 and that the amount she had to repay was to be reduced by the amount of back pay she owed.  See id.

information.  (AR 149-50).  Ultimately, a hearing was scheduled (AR 267-72) and took place on August 14, 2013 (AR 352-88).  On September 24, 2013, the ALJ found that Plaintiff's mobile home and land were "countable resources," the value of which, pursuant to statute, made her ineligible to receive SSI.  (AR 32-33).  On appeal, the Council upheld the ALJ's decision.[2]  (AR 8-10).

## III.   ISSUE PRESENTED

Whether the Council's determination that Plaintiff was not eligible to receive SSI because her home was an excess resource is supported by substantial evidence in the record and is free of legal error.

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review any final decision of the Commissioner.  This Court may set aside the Commissioner's denial of benefits when the ALJ's findings are "based on legal error or are not supported by substantial evidence in the record."  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citation omitted); see Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001) (stating ALJ's decision will be upheld if it is "free of legal error and supported by substantial evidence").  Substantial evidence is more than a mere scintilla but less than a preponderance.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  Substantial evidence is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  To determine whether substantial evidence supports a finding, a court must "consider the record as a whole, weighing both evidence that supports and detracts from the [ALJ's] conclusion."  Aukland, 257 F.3d at 1035 (quoting Penny

---

[2]     Because the Council adopted the ALJ's statements of law and findings of fact (AR 7) and issued the final decision of the Commissioner, unless otherwise indicated, throughout this memorandum, references to the ALJ's findings should also be presumed to be those of the Council.

3

v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  A court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (citing Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995)); see Mayes, 276 F.3d at 459.  If the evidence can reasonably support either affirming or reversing the ALJ's decision, "the court may not substitute its judgment for that of the ALJ."  Aukland, 257 F.3d at 1035 (citation omitted).

## V.    DISCUSSION

### A.    Pertinent Law

#### 1.    Non-Excludable Resources

An individual is eligible for SSI benefits if she is disabled and does not have more income or resources than permitted by law.  See 20 C.F.R. § 416.202(a)(3), (c), (d).  An asset in which an individual has an ownership interest or the legal right, authority or power to liquidate, or the legal right to use for her support and maintenance is a resource.  See Program Operations Manual System ("POMS")[3] SI 01110.115 A. With some exceptions, the value of any asset that meets the definition of a resource counts against the applicable statutory limit.  POMS SI 01110.200.

A disabled individual is eligible for benefits if her non-excludable resources do not exceed $2,000.00.  42 U.S.C. § 1382(a)(1)(B), (a)(3)(B); 20 C.F.R. § 416.1205(c).  Real or personal property that an individual owns and could convert to cash to be used for support and maintenance is a resource.  20 C.F.R. § 416.1201(a)  POMS SI 01110.100 B.1.  Non-liquid resources are property which

---

[3]    The Program Operations Manual System ("POMS") is an Agency interpretation that does not impose judicially enforceable duties on either this Court or the Council.  See Lockwood v. Comm'r, Soc. Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010) (citing Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2003)).  It is, however, an interpretation that is entitled to respect to the extent that it has the power to persuade.  Id. at 1073 (citation omitted).

4

is not cash and which cannot be converted to cash within twenty workdays.  20 C.F.R. § 416.1201(c)(1); POMS SI 01110.300 A.1.  Buildings and land are non-liquid resources.  Id.

2.    Valuation of Property

Non-liquid resources are generally evaluated according to their equity value. 20 C.F.R. §1201(c)(1).  For SSI purposes, the value of a resource is the amount of an individual's equity in it.  POMS SI 10110.400 A.2.  Equity value is the price that an item can reasonably be expected to sell for on the open market in the particular geographic area involved minus any encumbrances.  20 C.F.R. § 1201(c)(2)(i)-(ii); see POMS SI 01110.400 A.1.b. (defining equity value as "the current market value of a resource minus any encumbrance on it").  An encumbrance is a legally binding debt against a specific property.  POMS SI 01110.400 A.1.c.

a.    Establishing Current Market Value

If the Agency cannot use the claimant's allegation to establish current market value and no other evidence is available, the claimant should be asked to obtain an estimate from a knowledgeable source.  POMS SI 01140.100 C.2.  Knowledgeable sources include, but are not limited to, real estate brokers, banks, savings and loan associations, mortgage companies, an official of the local property tax jurisdiction and the like.  See POMS SI 01140.100 C.2.b.  If a claimant cannot obtain an estimate of a property's current market value, the Agency is to lend assistance. POMS SI 01140.100 C.2.c.  The Agency may obtain an estimate by phone and record the pertinent facts per POMS SI 01140.100 C.2.a, or it may mail the Agency's Real Property Current Market Value form to a knowledgeable source for an estimate.  POMS SI 01140.100 C.2.c.

If a claimant disagrees with the current market value evidence she submits or that the Agency obtains, and the difference is material to her eligibility, a rebuttal determination which takes into account all evidence previously in the file,

5

additional evidence that the claimant wants to submit, and other facts the field office has should be prepared.  POMS SI 01140.100 C.3.a.  The rebuttal determination must be supported by a preponderance of the evidence, and it must cover the entire period for which the value of the property is material to eligibility.  POMS SI 01140.100 C.3.b.

b.     Establishing Equity Value

The value of a non-liquid resource is determined at the first moment of the month for which eligibility must be determined.  POMS SI 01140.010 A.  The equity value of a resource is to be developed when:  1) the current market value of all countable resources exceeds the applicable limit; 2) an individual alleges a debt against the resource; and 3) the alleged equity value could permit eligibility.  POMS SI 01140.010 D.1.b.; POMS SI 01140.100 D.1.  The allegation of an encumbrance on a property must be supported with evidence of:  1) the original amount owed; 2) the outstanding principal balance; and 3) the schedule and amount of payments due on the balance.  POMS SI 01140.100 D.2.a.

Release forms permitting the Agency to access a claimant's personal information and financial account records should be obtained from a claimant.  POMS SI 01140.100 D.2.b.  The note or agreement that establishes a claimant's encumbrance should also be obtained from the claimant.  POMS SI 01140.100 D.2.c.

**B.     Analysis**

Plaintiff filed for SSI disability benefits in December 2009.  (See generally AR 131).  At that time, Plaintiff was living with her daughter (see AR 42), and she owned the property at issue located at 213 Camp Fire Court, California City, California ("Camp Fire property") (see AR 360).  Therefore, the Camp Fire property was a non-excludable resource subject to statutory value limitations.  See POMS SI 01110.115 A; see also POMS SI 01110.200.  In other words, in order for

Plaintiff to be eligible to receive benefits, the value of the Camp Fire property could not have exceeded $2,000.00 throughout the relevant adjudicatory period, here, December 2009 through September 2013.

The Council upheld the ALJ's statements regarding the pertinent regulations and rules as well as the ALJ's statements regarding the applicable issues and evidentiary facts. (AR7). Thereafter, it upheld the ALJ's determination Plaintiff's home was a countable, excess resource during the relevant period. (AR 8-10). Plaintiff argues that the Council erred in upholding this finding because there was insufficient evidence in the record to establish the value of Plaintiff's home during the relevant time period. (Memorandum in Support of Plaintiff's Complaint ("Pl.'s Compl.") 4-12, 15, 17, 23, ECF No. 15). The Agency asserts that substantial evidence existed in the record to support the ALJ's determination and find Plaintiff ineligible to receive SSI. (Memorandum in Support of Defendant's Answer ("Def.'s Answer") 3-8, ECF No. 20).

In reviewing these arguments, this Court is required to review the final decision of the Commissioner, namely, the August 2014 decision of the Council. See 42 U.S.C. § 405(g) (stating final decision may be reviewed by district court); see generally Sims v. Apfel, 530 U.S. 103, 106-107 (2000) (stating that actual decision of Council constitutes final decision of Commissioner). After reviewing the Council's decision, this Court finds: 1) that the Council failed to sufficiently develop the record with respect to the value of the Camp Fire property; and 2) that the Council's determination that the value of the Camp Fire property exceeded statutory limits is not supported by substantial evidence in the record.

1.   The Council Failed to Sufficiently Develop the Record with Respect to the Value of the Camp Fire Property

The ALJ has an independent duty to fully and fairly develop the record in a Social Security case and to assure that the claimant's interests are considered.

Tonapetyan, 242 F.3d at 1150. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry or gather additional information. Id.; see Mayes, 276 F.3d at 459-60 (citation omitted). Because the record was ambiguous and inadequate, the ALJ's duty to further develop the record was triggered.

Of primary importance is the fact that no legitimate 2009 value for the Camp Fire property was relied upon prior to the Council determining that the property exceeded the statutory valuation limits. At the August 2013 hearing, Claims Representative Christine Cabel testified that at issue was what the value of the Camp Fire property was in 2009. (AR 371; see generally AR 381). The ALJ accepted this assertion and advised Plaintiff's representative accordingly. (AR 381-82). Ms. Cabel also testified that a contemporaneous, new assessment of the property's value, should one be obtained, would apply to the year 2013, but it would not apply to what the property's value had been in 2009. (See AR 372). Despite these facts, prior to the Council's final determination that the Camp Fire property's value exceeded $2,000.00, the Council failed to correctly identify and cite to a 2009 value for the property.[4] (See generally AR 7-10) (Council citing to

---

[4] Of equal concern is the ALJ's repeatedly incorrect statement throughout his decision that Kern County did an assessment of the Camp Fire property in 2009 and that the value of the land at that time was $1,759.00, and the value of the mobile home was $8,229.00 and $8,269.00. (See AR 30-33 (ALJ attributing two different values to the same alleged 2009 Kern County property assessment)). The exhibit that the ALJ relied upon in stating the approximate $8,229.00/$8,269.00 value of the mobile home – exhibit 8 (AR 112-16) – contains Kern County tax assessments from the 2012-13 and 2010-11 tax years. Although the $40.00 difference in the mobile home value is arguably minor, the fact that these particular Kern County assessments are not from the year 2009 is significant. (Compare AR 112-13 (2012-2013 Kern County property assessment values), with AR 30-32 (ALJ's incorrect assertion four separate times that values mentioned are from a 2009 Kern County

county assessment values for 2007-2008, 2010-2011, and 2012-2013, but not 2009)).

A property value for the year 2009 was an essential factor in the ultimate determination regarding Plaintiff's eligibility for benefits.  Consequently, the Council was obligated to develop the record and make sure that a 2009 value had been provided prior to making a decision on the issue.  Although Plaintiff had the burden of providing the 2009 property value, see 20 C.F.R. § 416.200, the Agency was also required to assist Plaintiff when her representative communicated to the ALJ that she could not afford to hire a real estate appraiser (see AR 308, 315) and when Plaintiff's representative notified the ALJ that the Kern County Assessor's Office had indicated that it was unable to provide Plaintiff with Proposition 8 reassessed property values for any year other than the 2013-2014 year, but that a real estate expert would be able to provide estimates from previous years (AR 308).  POMS SI 01140.100 C.2.c. ("If the claimant . . . cannot obtain an estimate, lend assistance.").  Granted, the Agency did provide Plaintiff with assistance to determine the Camp Fire property's value for the 2013-2014 year.  (AR 289-92 (facsimile from Agency regarding how to lower property tax assessments); see generally AR 307 (result of Proposition 8 reassessed property valuation)).  However, because the market value in 2009 was at issue, assistance to gather market value information for that year should have been provided by the Agency as well.

The Commissioner asserts that it was Plaintiff's responsibility to provide proof of the Camp Fire property's value in 2009, and that when she did not, ultimately, there was enough information in the record from a variety of sources to support the Council's decision.  See Def.'s Answer 5, ECF No. 20.  However, as

property assessment)).  Despite this egregious error, the Council accepted this finding of the value of the mobile home.  (See AR 8).

9

discussed below, the broad vacillation in the property's alleged value in the years surrounding 2009 created ambiguity in the property's 2009 value and should have also prompted the ALJ to further develop the record.

At the hearing, Plaintiff testified that she had bought the Camp Fire property in 1999 for between $15,000.00 and $17,000.00. (AR 376). At that time, the property was in poor shape. (AR 373-78; see AR 217-18, 220, 244-45 (stating that ceiling was falling, mold was present, pipes were leaking, furnace needed to be checked, swamp cooler needed replacement)). Because of its condition, Plaintiff left the property in November 2004 (AR 373) and moved in with her daughter (see AR 42), planning to return to it after making repairs with back pay she was to receive from the Agency (AR 218-19, 245-46). The back pay never came. (See generally AR 218 (back pay from Agency was not deposited); see generally also AR 265 (back pay owed Plaintiff is credited to assessed overpayment)). Plaintiff lost her benefits, fell ill (AR 218-19), and never returned to the Camp Fire property (see AR 360). The property has remained vacant ever since. (Id.).

The record indicates that shortly thereafter, a flood disaster occurred in the area where Plaintiff's property was located. (See generally AR 95 (May 2005 Federal Emergency Management Agency ("FEMA") letter generally discussing disaster housing assistance due to Disaster 1577[5])). Subsequently, an October 2006

---

[5]     Disaster 1577 occurred between December 2004 and January 2005 and affected Kern County where Plaintiff's trailer home is located. See Federal Emergency Management Agency, http://www.fema.gov/disaster/1577/notices/initial- notice (last visited Sept. 21, 2015). It was a disaster declared under the Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5206. The Agency actively recognizes disasters declared under this Act, and it evaluates differently the income received by a claimant or repairs done due to lost, damaged or stolen resources during a disaster. See 20 C.F.R. §§ 416.1150, 416.1151.

10

Work Write Up / Bid Sheet done by Housing Rehabilitation Inspector Bud Ayers[6] indicated that Plaintiff's trailer was to be demolished because it was a "substandard residence." (AR 97). Even the Agency admitted that this evidence, while not monetary in nature, supported the idea that Plaintiff's mobile home had less value than the tax bill records had indicated. (AR 266). Furthermore, at the hearing, the ALJ actively recognized that there had been "a lot of . . . fluctuation in the value of real estate properties, certainly since 2008." (AR 369). Therefore, ALJ was aware that a disaster had occurred where Plaintiff's home was located, that there had been plans to demolish her home as far back as 2006, that property values were in flux just before 2009, and that these facts might lower the assessed value of Plaintiff's home. In addition, recent pictures of the trailer home were given to the ALJ at the August 2013 hearing. (AR 378-79). These were the same pictures that had been given to Kern County Appraiser Lupe Esquivias earlier in 2013, who ultimately determined that the 2013-2014 adjusted market value of Plaintiff's home was $3,000.00. (Compare AR 357-59, 378-79, with AR 307). Despite these numerous facts, the ALJ failed to clear up the confusion surrounding the 2009 value of Plaintiff's home prior to determining that it constituted an excess resource. (See generally AR 29-30). In light of the significant ambiguity surrounding the 2009 value of Plaintiff's mobile home, the Council was obligated to further develop the record on this issue.

>   2.   The Council's Determination that the Value of the Camp Fire Property Exceeded Statutory Limits is Not Supported by Substantial Evidence in the Record

In addition, the Council's determination that the 2009 value of Plaintiff's property exceeded statutory limitations is not supported by substantial evidence in

---

[6]   Although the write-up does not provide Ayers' contact information or the name of his employer (see AR 96-97), Plaintiff testified that she believed Ayers was associated with FEMA (AR 362; see generally AR 319).

11

the record.  When assessing the 2009 value for the Camp Fire property, the information was to come from a knowledgeable source such as a real estate broker, a financial institution, or an official of the local property tax jurisdiction.  POMS SI 01140.100 C.2.b.  Plaintiff's inability to provide such information required the Agency to obtain the estimate.  POMS SI 01140.100 C.2.c.  Instead of providing information from one of these sources, the Agency consulted the MLS.com and Zillow.com for its initial determination that Plaintiff's property was an excess resource.  (Compare AR 65, 68 (October 1, 2010 Agency's MSSICS notation that it used the websites to determine Camp Fire property's value), and AR 129-30 (October 1, 2010 Zillow.com property estimate of $85,000.00) with AR 131-39 (October 8, 2010 letter to Plaintiff denying eligibility due to excess resources and $30,000.00 valuation of property)).  Throughout this case, the Agency regularly used property estimates from unsanctioned sources to estimate the value of the Camp Fire property.  (See, e.g., AR 215-16A (March 11, 2013 Agency Report of Contact and Zillow.com 2012 property valuation of $43,629.00); see also AR 216D-G (March 11, 2013 Lexis-Nexis.com 2012 assessed property value of $9,988.00)).  Moreover, at the hearing, Claims Representative Christine Cabel admitted that the Agency could not use Zillow.com as an official source to determine property values.  (See AR 368-69).  Despite this fact, the Council failed to discount the Agency's use of Zillow.com and instead incorporated its valuation into its analysis.  (See AR 8).

Of problematic significance as well is the fact that the Council used different variables to determine value for the years it reviewed.  For example, for the 2007-2008 year, the Council determined that the net assessed value of $2,369.00 was the Camp Fire property's value that year.  (Compare AR 8 (Council's 2007-2008 valuation of $2,369.00), with AR 100 (2007-2008 Secured Tax Property Bill's net assessed value of $2,369.00)).  This amount accounted for a $7,000.00 exemption

on the property (see AR 100)[7], which the Council appears to have considered an encumbrance. (See AR 9 (Council stating that $2,369.00 net assessed value took encumbrances into consideration)). However, for the 2010-2011 and 2012-2013 years, the Council disregarded the listed $7,000.00 exemption. (Compare AR 8 (Council's 2010-2011 and 2012-2013 valuations of $9,721.00 and $9,988.00, respectively), with AR 119 (2010-2011 Secured Property Tax Bill's net total value of $2,721.00), and AR 112 (2012-2013 Property Details' net total taxable value of $2,988.00)). The Council's application of the exemption in one of the years and not the rest – regardless of which approach was correct – also warrants a remand given that the valuation for the relevant years was inconsistent, and calls into question the validity of the Council's ultimate finding.

Moreover, because the equity value is used to determine a resource's value in SSI cases, POMS SI 10110.400 A.2, the Council was required to consider the market value of the Camp Fire property minus all its encumbrances. 20 C.F.R. § 1201(c)(2)(i)-(ii); see also POMS SI 01110.400 A.1.b. (definitions of equity value).

After the hearing, in a letter dated August 29, 2013, Plaintiff's representative conveyed to the ALJ that he had spoken with County Appraiser Lupe Esquivias who had provided him with the amounts of unpaid taxes on the Camp Fire property from 2006 to 2012. (AR 310). The amounts were listed in the letter. (Id.). The total owed, including penalties was $1,499.23. (Id.). In the decision, the ALJ rightfully questioned the validity of the information because it did not come directly from Mr. Esquivias himself. (See AR 32). He then discounted all but the 2009 overdue tax amount in the post-hearing documents that had been submitted and

---

[7]     The Agency used this same figure in its initial valuation of the Camp Fire property. (See AR 99) (March 2008 Report of Contact noting property's net assessed value of $2,369.00 and remarking that amount could make Plaintiff ineligible without determining the current market value of her property).

noted that the amount was still not enough to put the Camp Fire property value under the statutory limit.  (See id.).  However, if the owed tax amounts from 2006 through 2009 were still outstanding in 2009, or if any tax balance remained throughout the relevant adjudicatory period, in all likelihood, the total accrued tax debt from the previous years would ultimately be deducted from the value of Plaintiff's property were it to be sold.

Additionally, in its decision, the Council opined, "Since the date of the application, the resource value has exceeded $2,000.00, and rendered the claimant ineligible for Supplemental Security Income."  (AR 8).  The Commissioner agrees and argues that the value of Plaintiff's property during the relevant adjudicatory period was reasonably determined by the Council.  (See Def's Answer 6, ECF No. 20).  However, the above-referenced exemptions on the Camp Fire property – which the Council accounted for in its 2007-2008 year valuation analysis – all lower the value of the property very close to the statutory $2,000.00 maximum, and it does not appear that the values on those assessment documents account for the past due taxes Plaintiff's representative indicated were owed on the property or that it accounts for any other possible encumbrances.  (See generally AR 100, 112, 119 (tax bills and property details); see also AR 310 (letter listing past due property tax amounts)).

The Commissioner also argues that Plaintiff has not established that her outstanding property tax payments constitute an encumbrance, specifically, that Plaintiff did not establish that there was a tax lien or judgment placed against the property.  (Def.'s Answer 7, ECF No. 20).  It is true that Plaintiff did not allege encumbrances on her property in the specific format indicated in the POMS guidelines.  See, e.g., POMS SI 01140.100 D.2.a (requiring evidence of amount owed, outstanding principal balance, and schedule and amount of payments due on balance).  However, Agency guidelines indicate that an encumbrance is "a legally

binding debt [that] . . . . reduces the value of the encumbered property," POMS SI 01110.400 A.1.c, and the guidelines suggest that the sale of an encumbered property will require debt satisfaction from the proceeds of the sale.  Id.  Thus, the suggestion that back taxes would not be a legally binding debt on Plaintiff's property were she to sell it appears to be a specious argument to be considered on remand, if appropriate.  For these reasons, the Council's ultimate determination that Plaintiff's home exceeded statutory value limits is not supported by substantial evidence in the record.

>           3.      The Council's Decision Did Not Constitute Harmless Error

The court will set aside a denial of Social Security benefits "only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error." Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (citation omitted); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Even where the ALJ reaches a nondisability finding for invalid reasons, the court will not reverse the ALJ's decision if the error was harmless.  See, e.g., Carmickle v Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (reviewing adverse credibility finding for harmless error and citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)).  For an error to be harmless it must be "clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommassetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008); Robbins, 466 F.3d at 885.  "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, . . . it is whether the ALJ's decision remains legally valid, despite such error." Carmickle, 533 F.3d at 1162; see Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record") (citation omitted).  "Where the circumstances of a case
//

show a substantial likelihood of prejudice, remand is appropriate." <u>McLeod v.</u> <u>Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2010).

The equity value of Plaintiff's Camp Fire property in 2009 is essential to the eligibility determination in this matter.  The record shows that prior to the Council issuing its decision, not only did it fail to develop the record sufficiently to enable it to properly determine this value and dismiss events that significantly affected the property's value, it subsequently based its decision on inconsistent valuation formulas and assessments from incorrect years.  Thus, its decision that Plaintiff was ineligible for SSI benefits due to excess resources is not supported by substantial evidence in the record, nor is it free from legal error.  Moreover, given that Plaintiff had previously been determined to be disabled and had been receiving benefits prior to 2009, there is a substantial likelihood that she has been prejudiced as a result.  As a result, these errors were not harmless.[8]

## VI.   <u>CONCLUSION</u>

The Council's determination that Plaintiff was ineligible to receive SSI benefits between December 1, 2009 and September 24, 2013 due to excess resources is not supported by substantial evidence in the record and is not free from legal error.  For these reasons, the Council's decision must be REVERSED and REMANDED for further administrative proceedings consistent with this decision.

DATED: September 28, 2015

_Rozella A. Oli_
_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**

---

[8]      In light of these findings, this Court need not address the parties' remaining arguments.

16